UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| PATOKA VALLEY AIDS COMMUNITY ACTION GROUP, INC., Plaintiff, v. CITY OF LOOGOOTEE, INDIANA, Defendant. | ) | Case No. 3:26-cv-00002-RLY-CSW |

**EMERGENCY MOTION FOR PARTIAL MODIFICATION OF COURT'S ORDER GRANTING PERMANENT INJUNCTION**

**Introduction**

The City of Loogootee, Indiana (the "City"), enacted what it intended to be a content-neutral special events ordinance narrowly tailored to serve the City's significant governmental interests in protecting public safety and order, promoting the free flow of traffic on streets and sidewalks, and preserving the Loogootee Commercial Historic District, which was officially listed on the National Register of Historic Places in September 2025. The ordinance also designed to serve the City's interest in maintaining the desired aesthetic and character the downtown commercial area and promoting its downtown Loogootee Community Pavilion.

By Order dated August 31, 2026, the Court permanently enjoined the City from enforcing any provisions of its special events ordinance and provided the City with just four days within which to accommodate a 200+ attendee, day-long event in an area extending beyond even the traditional public square and requiring the City to immediately marshal resources it simply does not have in order to completely close off a significant portion of the heart of downtown Loogootee to the rest of the City's citizens and visitors with no opportunity to provide those

citizens and visitors with reasonable notice:

> Defendant shall allow PrideFest 2026 to take place on September 5, 2026, from 10:00 a.m. to 7:00 p.m. in and around the Public Square in downtown Loogootee (framed by U.S. 231, Public Square Street, N. Line Street, and E. Main Street). The following roads shall be closed for the duration of the event, as requested by Patoka Valley: Public Street Square (from U.S. 231 to N. Line Street), N. Line Street (from U.S. 231 to Wood Street), and E. Main Street (from U.S. 231 to N.E. 1st Street).

(Dkt. 44).

While the City understands the Court's determination regarding the constitutionality of the special events ordinance and the interest of the Court in enjoining prospective enforcement of the ordinance, the portion of the permanent injunction requiring the City to accommodate an event with the scope and size of PrideFest in and around the public square while ensuring the safety of attendees and meeting its existing obligations to full-time City residents and business, all with just four days' notice, creates an undue hardship and practical impossibility. Therefore, the City respectfully requests the Court partially modify its Order Granting Permanent Injunction with respect to the 2026 version of PrideFest only.

**Legal Standard**

Federal Rule of Civil Procedure 60(b)(6) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for any reason that justifies relief. Thus, this Court enjoys the inherent power to modify a permanent injunction whenever principles of equity require it to do so. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992). Indeed, the power of a court of equity to modify a decree of injunctive relief is long-established, broad, and flexible. *Brown v. Plata*, 563 U.S. 493 (2011). The district court has wide, but not limitless, discretion to modify injunctive decrees. *System Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642 (1961). However, in the

absence of an abuse of discretion, a court's disposition of the motion will not be disturbed on appeal. *Securities and Exchange Commission v. Thermodynamics, Inc*., 464 F.2d 457 (10th Cir. 1972). The test of abuse in such cases is whether the change in the decree serves to effectuate or thwart the injunction's purpose. *Chrysler Corp. v. U.S.*, 316 U.S. 556 (1942).

Courts have the continuing duty and responsibility to assess an injunction's efficacy and consequences. *Sindi v. El-Moslimany*, 896 F.3d 1 (1st Cir. 2018). Whether the terms of a permanent injunction that may be modified involves striking a balance between the policies of res judicata and the right of the court to apply modified measures to changed circumstances. *Wright*, 364 U.S. 642. A final or permanent injunction is a continuing process over which a court of equity necessarily retains jurisdiction in order to do equity. Even though modification is not warranted in all circumstances, "a district court should exercise flexibility in considering requests for modification . . . ." *Rufo*, 502 U.S. 367 at 383. "Modification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous." *Id*. at 384.

**Material Facts Supporting Relief**

Before the Loogootee Community Pavilion opened in June 2025, public events were sometimes held in the public square. (Dkt. 39-2, ⁋ 4) 10. However, the public square is essentially a small, trapezoid-shaped island surrounded by the thoroughfares of Main Street, Line Street, and U.S. Highway 231 in the commercial heart of Loogootee. *Id.*, ⁋ 5. 11. The public square is ill-equipped for outdoor events with more than 50 attendees due to its small size made smaller by the presence of the fountain, the safety concerns presented by traffic on the surrounding thoroughfares, and the disruption to adjacent business owners and residents when those thoroughfares must be shut down to accommodate well attended events with vendor booths

or other attractions. *Id.*, ⁋ 6.

Providing the support necessary to accommodate an event in and around the public square represents a substantial undertaking for a city the size of Loogootee, which has fewer than 3,000 residents and is served predominately by a small team of volunteer municipal officials and equally small team of City employees, and therefore requires substantial advance notice and planning. (Dkt. 48-1, ⁋⁋ 4-5). Downtown business owners and residents also rely on the advance notice to ensure they are not deprived of access to and intended use of their property. Indeed, residents and business owners typically receive 30 days' notice of proposed street closures to make alternative arrangements for parking, access, hours of operation, etc. *Id.*, ⁋ 6. Notice provided only days before an extended holiday weekend will be insufficient, particularly for individuals who have parked automobiles within the area subject to closure and have already left town with no reasonable opportunity to relocate their vehicles. The City would be required to remove those vehicles and essentially deprive the owners of those vehicles of possession and use thereof without due process, opening the City to additional, unanticipated liability.

Additionally, the multiple street closures contemplated by the Court's Order Granting Permanent Injunction require the placement of large concrete barriers to ensure attendee safety and provide sufficient notice and warning to motorists that streets normally anticipated to be open to vehicular traffic without restriction. (Dkt. 48-1, ⁋ 7). When use of such barriers can be secured, it still requires a team of multiple trained and qualified individuals to move and properly position the massive concrete structures. *Id.*, ⁋ 8. The City of Loogootee Street Department consists of only two dedicated employees. *Id*. The Street Department often relies on the Water and Sewer Department to lend employees for more involved projections, such as implementation of multiple street closures. *Id.*, ⁋ 9. However, a Department supervisor has indicated that only

one on-call employee is currently available to assist in providing the services necessary to effect the street closures contemplated by the Court's Order. *Id*. Therefore, as a practical matter, the City simply does not have the public works personnel necessary to accommodate the street closures contemplated by the Order within the brief time allotted.

Without the barriers in place or public works personnel available to supervise and maintain the contemplated street closures throughout the duration of the daylong PrideFest event, the City would need to rely on its police department to provide supervision, maintenance, and enforcement of the street closures. (Dkt. 48-1, ⁋ 10). However, the Loogootee Police Department consists of just four officers, only one of whom is currently on duty. *Id*. Two officers are new hires enrolled in the Indiana Law Enforcement Academy's 16-week residential training and certification course for new law enforcement officers. A third officer is in Ohio receiving K-9 officer training. *Id*.

Under the prevailing circumstances, compliance with that portion of the Court's Order Granting Permanent Injunction regarding the 2026 PrideFest to be held on September 5, 2026, represents a practical impossibility and would create an undue hardship for the City absent limited modification. The City's mayor cannot identify any action reasonably available to the City of Loogootee that would realistically allow the City to comply with the provision of the Court's Order Granting Permanent Injunction cited above in paragraph 2 within the few days remaining until PrideFest 2026. (Dkt. 48-1, ⁋ 11).

## Argument

The City is neither requesting dissolution of the Court's Order nor asking the Court to revisit or reconsider the legal reasoning upon which the Order is based. Rather, the City is seeking very limited relief with respect to the 2026 version of PrideFest only based exclusively

upon the practical impossibility of compliance existing under the prevailing circumstances and a balance of the hardships favoring modification of the Order.

While the City would face undue hardship and practical impossibility if forced to comply with the specific requirements of the Court's Order regarding the 2026 PrideFest celebration to be held September 5, 2026, a reasonable, safe, and readily available alternative exists that would relieve the City of any undue hardship while still allowing Plaintiff full opportunity to host its event and promote its message to the community. The Loogootee Community Pavilion area, which is approximately one block away from the public square, offers about ten times the event space of the small island of grass surrounding the fountain and features an open-roofed pavilion and other amenities designed for connection and celebration. (Dkt. 39-2, ⁋ 9). Overflow space is available via the adjacent railway right-of-way space, multiple street closures are not required, and attendees can celebrate in the same safe, appropriate, and thoughtfully designed public forum that has become the center of cultural activity within the community. *Id.*, ⁋ 11.

The Loogootee Community Pavilion provides a realistic alternative location for Plaintiff's PrideFest celebration without foreclosing Plaintiff's ability to reach any audience with its message. Plaintiff has acknowledged that "Loogootee refused to approve PrideFest 2026 occurring in the Public Square area, but indicated that it could occur in the Pavilion area," and previously indicated that the Pavilion represents a viable, even if not preferred, option for hosting PrideFest "in the event an injunction was not in place by the time of PrideFest 2026". (Dkt. 34 at 12). While the injunction itself was put in place by the time of PrideFest 2026, it issued with only four days remaining before the event and at a time when the personnel resources available to the City have been unexpectedly depleted. Thus, the effect of the injunction being issued with only four days remaining until PrideFest 2026 is the same as it would have been in the event an

injunction had not been in place by the time of PrideFest 2026. Moving PrideFest 2026 to the Pavilion offers the only equitable and reasonable solution.

The City recognizes that "the Pavilion area…is not acceptable to Patoka Valley, as it wishes to have the festival where it has always been" because "[h]aving PrideFest in this location has always made a powerful statement concerning the equality and inclusion of the LGBTQ+ community." (Dkt. 34 at 12). But hosting one iteration of PrideFest one block away in the Loogootee Community Pavilion will not detract from the powerful statement of inclusion Plaintiff aims to make. To the contrary, "This Pavilion is more than a venue—it's become a symbol of our pride, unity, and vision for the future." (Dkt. 39-1). And the City's website touts the Pavilion as "the premier gathering spot and green space directly located in the heart of Loogootee," ideal for occasions "[f]rom farmers markets to outdoor movie nights to holiday events." *Explore Loogootee*, CITY OF LOOGOOTEE (last visited July 9, 2026), https://loogootee.in.gov/explore. Therefore, hosting PrideFest 2026 at the Pavilion will highlight equality and inclusion of the LGBTQ+ community in Loogootee and demonstrate that the LGBTQ+ community has no interest in creating any undue hardship for the City or its residents or receiving special treatment that would isolate PrideFest sponsors and attendees from the larger Loogootee community.

Moreover, the historical importance of the public square and fountain can still be incorporated into PrideFest 2026 by making the one-block trip from the Pavilion to take the traditional PrideFest photograph. The juxtaposition of hosting the main event within the City's new premiere public forum while incorporating the short trip to the fountain for the photograph would allow PrideFest 2026 organizers and attendees to celebrate and honor the modern inclusion of LGBTQ+ individuals as equal members of the Loogootee community who share the

same Pavilion in which all other significant City events are held while paying homage the historical struggle the LGBTQ+ community has faced to get to this point and the need to continue the effort into the future.

"Modification of a consent decree may be warranted when changed factual conditions make compliance with the decree substantially more onerous." *Rufo*, 502 U.S. 367 at 384. The prevailing circumstances and balance of the hardships in this particular instance support the City's request for a limited modification of the Court's Order Granting Permanent Injunction.

**Conclusion**

For the reasons set forth above, and such other considerations of equity the Court may consider, the City of Loogootee, Indiana, respectfully requests the Court modify its Order Granting Permanent Injunction only to the extent that PrideFest 2026 no longer take place in the public square area identified within the Order and instead be moved to the Loogootee Community Pavilion one block away in order to avoid the practical impossibility and undue hardship to the City that will otherwise result under the prevailing circumstances.

Respectfully submitted,

**CARSON LLP**

By: /s/ *Travis W. Montgomery*
Travis W. Montgomery, #27971-49

880 W. Monon Green Blvd., Suite 101
Carmel, Indiana 46032
Telephone: (260) 423-9411
montgomery@carsonllp.com

**CERTIFICATE OF SERVICE**

I certify that on September 3, 2026, I electronically filed the foregoing document. A copy of this document will be served on the following via the Court's electronic filing system.

Kenneth J. Falk
Stevie J. Pactor
Joshua Bleisch
ACLU of Indiana
kfalk@aclu-in.org
spactor@aclu-in.org
jbleisch@aclu-in.org

/s/ *Travis W. Montgomery*
Travis W. Montgomery